UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

YOUNG TAEK CHOI, YUN SEOB SHIN, JI
HYUN KIM, and RACHEL SON,

                  Plaintiffs,

          -against-

SD TOOLS, INC., ZERED, INC., and HAK
JIN HAN,

                  Defendants.

-------------------------------------x

**MEMORANDUM & ORDER**
19-CV-2008(EK)(VMS)

ERIC KOMITEE, United States District Judge:

        The four plaintiffs in this case assert that the
defendants failed to comply with various provisions of the Fair
Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").
They bring claims for: (1) FLSA overtime wages; (2) NYLL
overtime wages; (3) "spread of hours" compensation under the
NYLL; (4) violation of the NYLL's time of hire wage notice
requirement; and (5) violation of the NYLL's pay stub
requirement.  The defendants are two companies — SD Tools, Inc.
and Zered, Inc. — and their owner, Hak Jin Kim.

        The defendants have moved for summary judgment against
one defendant — Choi — on the ground that, as an "outside
salesperson," he is exempt from the wage-and-hour requirements
at issue.  Choi disputes that he qualifies for the outside-
salesperson exemption.  In addition, all plaintiffs have moved

for summary judgment on all of their claims.  They contend that judgment is warranted because they are not covered by any exemption and because it is undisputed that they were not paid for all overtime hours worked.

For the reasons that follow, the plaintiffs' motion for summary judgment is denied.  The defendants' motion is granted.

## I.    Background

The facts in this order are drawn from the parties' submissions in connection with the motion for summary judgment, including the plaintiffs' Local Rule 56.1 Statement ("Pl. 56.1" (ECF No. 70-2)), and the defendants' opposition thereto ("Def. 56.1 Response" (ECF No. 71)).  Citations to a party's Rule 56.1 Statement incorporate the documents cited therein.  The defendants have not filed an affirmative Rule 56.1 statement in support of their motion for partial summary judgment, but rely on excerpts from Mr. Choi's deposition and their earlier Rule 56.1 Response in opposition to summary judgment .

The parties (and, as applicable, their claims) are as follows:

**Defendants**

*SD Tools, Inc.*  Defendant SD Tools is located in College Point, New York.  Like its sister company Zered, it sold industrial tools and fabricated components.  Pl. 56.1 ¶ A(2),

A(8); Decl. of Jiwoo Han ¶ 1, ECF No. 70-15.  SD Tools functioned in the New York tristate area as a retail and wholesale reseller.  *Id.*; Decl. of Hak Jin Han ("Han Decl.") ¶¶ 1-2. ECF No. 76.

   ***Zered, Inc.***  Zered is a nationwide wholesale reseller of industrial tools.  Han Decl. ¶ 2.  It is operated out of the same location as SD Tools, under the same ownership.  Pl. 56.1 ¶ A(8); Han Decl. ¶ 1.

   The parties do not distinguish between Zered and SD Tools when referring to the plaintiffs' employment relationships.[1]

   ***Hak Jin Han.***  Defendant Han (who went by the name James) is the sole owner of both SD Tools and Zered.  Pl. 56.1 ¶ A(1); *see* 7/9/21 Dep. of Hak Jin Han ("Han Dep.") 7:22-9:2, ECF No. 70-3; Han Decl. ¶¶ A(1)-(2).  Han continues to manage both companies, which sell their products by sending employees to visit customers along designated sales routes.  Def. 56.1 Response ¶ 2.

**Plaintiffs**

   ***Young Taek Choi.***  Plaintiff Choi (also known as David) worked for the defendants from approximately October 2016 to

---

[1] Indeed, the defendants themselves repeatedly refer to each plaintiff as working for "Defendants" collectively.  *See, e.g.*, Def. Opp. 2; Defs. Mot. for Partial Summary J. 1, ECF No. 82.  And two plaintiffs testified that the companies effectively functioned as a single operation.  *See* Shin Dep. 110:22-111:12; Son Dep. 5-12.

November 2017, and then again from February or March 2018 to November 2018.  *See* Pl. 56.1 ¶ B(a)(1); Han Decl. ¶ 5.  Choi was hired as a salesperson.  *See* Han Decl. ¶ 6; Dep. of Young Taek Choi[2] ("Choi Dep.") 31:23.  Like other sales employees, Choi had an assigned company vehicle and was responsible for selling the defendants' products in a designated area.  Choi Dep. 52:18-22, 180:23-25.  David left this job in fall of 2017, due to an injury to his elbow.  Pl. 56.1 ¶¶B(a)(1), (B)(a)(9); Def. 56.1 Response ¶(B)(a)(1).  He returned the following year — to work again as a salesperson, but with a different compensation structure.  Pl. 56.1 ¶¶ 1, 9-11.

Choi moves for summary judgment on all five causes of action.  The defendants have cross-moved for summary judgement on three of Choi's claims: his FLSA overtime wages, NYLL overtime wages, and spread-of-hours claims (Counts I-III).  The defendants' motion is predicated on the assertion that Choi clearly qualifies, on the evidentiary record submitted, for the "outside salesperson" exemption.  Defs. Mot. for Partial Summary J., ECF No. 82.

*Yun Seob Shin.*  Plaintiff Shin, too, was hired as a salesman.  Dep. of Yun Seob Shin ("Shin Dep.") 11:21-24, 26:14-

---

[2] The Plaintiffs and Defendants submitted different excerpts from the same deposition of Choi.  *See* ECF Nos. 70-5, 82-1, 83-1.  The deposition is continuously paginated, and therefore consistently paginated in each excerpt.  Accordingly, the court refers to all Choi deposition excerpts as "Choi Dep."

19, ECF No. 70-7; Han Decl. ¶ 12.  He worked for the defendants from July 2016 to March 2019.  *See* Pl. 56.1 ¶ B(a)(1); Han Decl. ¶ 12; Shin Dep. 25:5-17.

The parties do not agree on the nature of Shin's job duties.  *Compare* Han Decl. ¶¶ 16 with Shin Dep. 55:5-56:25.  Han testified that after six months, Shin became the companies' Chief Marketing Officer ("CMO"), *see* Han Dep. 32:2-9; Shin testified that he was never asked to take on the responsibilities of a CMO and never actually did so.  *See* Shin Dep. 55:5-56:25.  They agree that towards the end of his employment, Shin also assisted Han in managing the defendants' warehouse.  Pl. 56.1 ¶¶ B(b)(5); *see* Oct. 26, 2021 Han Dep. 36:13-20.

They also diverge in their descriptions of his compensation structure: Shin says he was to be paid weekly, Pl. 56.1 at (B)(b)(12)-(13), whereas the defendants claim he was compensated through car payments and paid a base weekly salary and monthly commission based on sales, Def. 56.1 Response ¶¶ (B)(1)(12)-(13); Def. Han Decl. ¶¶ 17-18.

It is undisputed that Shin spent seven months based in Cleveland, Ohio, during which he also traveled to Pittsburgh for work.  Pl. 56.1 at ¶¶ (B)(b)(14)-(15).  He also spent seven months in Orlando, Florida, during which time he occasionally

worked in Georgia.  *See* Shin Dep. 83:7-15, 101:4-15; Han Decl. ¶ 13.

Shin moves for summary judgment on each of his claims. The defendants oppose summary judgment, arguing that Shin, too, is an exempt outside salesman, though (unlike with Choi) they have not moved affirmatively for summary judgment on this basis. As an alternative basis for denying Shin's motion, the defendants contend that Shin qualifies for the administrative exemption, and / or that he is exempt under the "combined exception," for employees who perform multiple types of exempt work.  They also deny that he ever worked more than forty hours per week.  Defs. Mem. in Opp. to Pl. Summary Judgment ("Def. Opp.") 9-17, ECF No. 72.

*Rachel Son.*  Plaintiff Son worked for the defendants from May 2018 to March 2019.  Pl. 56.1 ¶ B(d)(29); Han Decl. ¶ 38.  She performed "basic" "office job" duties including filing and answering phones.  Dep. of Rachel Son ("Son Dep.") 11:17-12:8, ECF No. 70-8.  Son moves for summary judgment on each claim.  The defendants concede that Son is non-exempt, but they oppose summary judgment nonetheless, contending there is a material dispute over whether she ever worked more than forty hours in a workweek.  Def. Opp. 20-22.

*Ji Hun Kim.*  Plaintiff Kim worked for the defendants from approximately January or February 2016 to December 2017.

6

*See* Pl. 56.1 ¶ B(c)(18); Han Decl. ¶ 27.  Like Son, Kim worked in administrative roles at the corporate defendants' offices. *See* Pl. 56.1 ¶¶ B(c)(19), (30); Han Decl. ¶ 45.  Her duties included accounting, billing, and customer relations.  *See* Dep. of Ji Hyun Kim ("Kim Dep.") 7:18-20, 11:21-23, ECF No. 70-6. The parties dispute the scope of Kim's authority.  Han described Kim as an "office manager" with the ability to hire, fire, and train employees.  Han Dep. 33:18-35:6; Han Decl. ¶ 31.  But Kim disputes that she ever held that title or any supervisory responsibilities.  Kim Dep. 15:11-22, 19:13-23.  Kim also moves for summary judgment on each claim; the defendants assert she is an exempt administrative employee and see genuine disputes of material fact as to the number of hours she worked.

*    *    *

  **_Defendants' Record-Keeping._**  The defendants concede that they maintained no time clock, timecard machine, or other standardized procedure to track any of the hours that the plaintiffs worked.  Pl. 56.1 ¶ A(6); *see* Han Dep. 25:1-9, 66:24-67:2.  They likewise admit that the plaintiffs never received any "time-of-hire" notices or pay stubs.  Pl. 56.1 ¶¶ B(a)(13), B(b)(17), B(c)(28), B(d)(36); *see* Def. 56.1 Response 8, 13, 17, 20.

## II.  Legal Standard

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  "A fact is material for these purposes if it might affect the outcome of the suit under the governing law.  An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001).

The moving party has the burden of demonstrating the absence of a dispute of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The movant can carry that burden by "pointing out to the district court . . . an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

If the movant carries its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  If the non-moving party fails to do so, the Court should grant summary judgment.  In performing this analysis, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw

all reasonable inferences against the movant." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d. Cir. 2024).

When plaintiffs and defendants cross-move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

## III. Discussion

### A.  Rule 56.1 Statement

Local Rule 56.1(a) requires that a short and concise statement of undisputed material facts be filed with any motion for summary judgment.  The rule further provides that "[f]ailure to submit such a statement may constitute grounds for denial of the motion."  As mentioned above, the defendants have not submitted an affirmative 56.1 statement in support of their motion for partial summary judgment.  Still, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with the local rules," including Rule 56.1. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009).  The Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such as statement." *Id.; see also*

*Gilani v. GNOC Corp.*, No. 04-CV-2935, 2006 WL 1120602 (E.D.N.Y. Apr. 26, 2006) (looking past parties' failure to submit 56.1 statements and ruling on summary judgment motion based on the record).[3]  I consider the defendants' motion on its merits.

**B.  Plaintiffs' Overtime Claims**

The Fair Labor Standards Act and New York Labor Law both require employers to pay time-and-a-half for hours worked in excess of forty per week, unless a given employee falls into one or more exempt categories.  29 U.S.C. § 207; *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 125 (2d Cir. 2020).  All plaintiffs assert that they were non-exempt employees, that they worked overtime, and that the defendants failed to pay them time-and-a-half.

The defendants respond that there are genuine disputes of material fact regarding whether Plaintiffs were exempt employees and worked overtime.  And as to plaintiff Choi, the defendants cross-moved for summary judgment arguing there is no genuine dispute of material fact that he was an exempt employee.

As set forth below, the defendants are entitled to summary judgment based on Choi's exempt status.  There are, however, triable issues of fact about the other three

---

[3] This approach can be appropriate when, as here, all parties cite to the record in their briefing.  *See Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2010 WL 3924677, at *1 n.2 (E.D.N.Y. Sept. 30, 2010).

plaintiff's employment.  Accordingly, none of the plaintiffs are entitled to summary judgment on their overtime wage claims.

>    1.  <u>FLSA and NYLL Overtime Requirements</u>

The FLSA generally requires employers to pay employees overtime compensation for work in excess of forty hours per week.  29 U.S.C. § 207(a).  The NYLL has the same requirement. *See* N.Y. Lab. L. § 651; 12 N.Y.C.R.R § 142-2.2.[4]

"To establish liability under the FLSA for a claim for unpaid overtime, a plaintiff must prove that [he or she] performed work for which [he or she] was not properly compensated, and the employer had actual or constructive knowledge of that work."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).  The plaintiffs' burden is diminished, however, when an employer has not kept time records.

Both the FLSA and NYLL require employers to maintain records of their employee's work hours and wages.  *See* 29 U.S.C. § 211(c); N.Y. Lab. L. §§ 196-a, 195(4).  Here, the defendants admit that they did not do so.  Defs. 56.1 Response ¶ 6; Han Decl. Tr. 66:24-67:2.  Because of this, the plaintiffs "need only present sufficient evidence to show the amount and extent

---

[4]  The NYLL may require an employer to pay overtime even when the FLSA does not.  *See* 12 N.Y.C.R.R § 142-2.2; *Hayward v. IBI Armored Services Inc.*, 954 F.3d 573, 575-76 (2d Cir. 2020) (under the NYLL, "employees subject to FLSA exemptions" may be "nonetheless entitled to overtime compensation at a rate of one and one-half times the minimum wage").

of the uncompensated work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362.

A plaintiff may meet this burden "through estimates" formed "based on his own recollection." *Id.*; *see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). "It is well settled that this burden may be met solely through a plaintiff's testimony . . . ." *Canela-Rodriguez v. Milbank Real Est.*, No. 09-CV-6588, 2010 WL 3701309 (S.D.N.Y. Sept. 20, 2010); *see also Mangoni v. Smith & Laguercia*, LLP, 661 F.Supp.2d 412, 417 (S.D.N.Y. 2009) ("[Plaintiff] has provided evidence of the approximate number of hours for which she believes she is entitled to overtime compensation, and Defendants dispute this evidence. There is therefore a genuine dispute of material fact on the issue."). Once the plaintiff has submitted such evidence, the burden shifts to the employer to present "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Kuebel*, 643 F.3d at 362.

2.  <u>Exemptions</u>

Certain employees, however, are exempt from the FLSA's overtime protections. 29 U.S.C.A. § 213. The NYLL's overtime provisions likewise turn on these exemptions. *See* 12 N.Y.C.R.R. § 142-2.2 (providing different overtime coverage to employees who are exempt under the FLSA than those who are not); *id.* at

§ 142–2.14 (excluding "outside salesperson[s]" and individuals employed in an "[e]xecutive, administrative, or professional capacity" from the NYLL's definition of "employee" for overtime pay).  Where the same exemptions are relevant to the NYLL and the FLSA, courts conduct a single analysis.  *See, e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012); *Kinney v. Artist & Brand Agency LLC*, 13-cv-08864, 2015 WL 10714080 at *12 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, Case No. 13-cv-08864, 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016).  The employer "bears the burden to establish the applicability of an[y] exemption under the FLSA." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018).  Two exemptions are at issue in this case: the "outside salesperson" and "administrative" exemptions.  If the employee's primary duties involve a combination of exempt categories — for example, if she spends half her time on exempt "executive" work, and half working as an outside salesperson, the employee will be exempt under the "combined exception."  29 CFR § 541.708.

      ***Outside Salespeople.***  The FLSA's overtime provisions do not apply to "any employee employed . . . in the capacity of outside salesman."  29 U.S.C. § 213(a)(1).  Congress delegated authority to the Department of Labor to "issue regulations from time to time to define and delimit" the term outside salesman. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147

(2012).  "In light of the statute's express delegation to the Secretary of Labor, all of these regulatory definitions have the force of law as much as though they were written in the statute."  *Flood v. Just Energy Marketing Corp.*, 904 F.3d 219, 228 (2d Cir. 2018).

As the DoL currently defines it, an outside salesman is an employee whose "primary duty" is "making sales" or "obtaining orders or contracts," and who is "customarily and regularly engaged away from" the employer's premises in that effort.  29 C.F.R. § 541.500(a); *see also* 12 N.Y.C.R.R. § 142-2.2 (applying FLSA Exemption 13(a)(1), the outside salesman exemption); 12 N.Y.C.R.R. § 142-2.14(c)(5) (defining outside salesperson).  The term "sale" is defined to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  29 U.S.C. § 203(k).

***Administrative Employees.***  The FLSA's overtime provisions do not apply to "any employee employed in  a bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1); *see also* 12 N.Y.C.R.R. § 142-2.2 (applying FLSA Exemption 13(a)(1)); *id.* § 142-2.14(4)(ii) (definition of administrative capacity).  The administrative exemption applies to an employee "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's

14

customers." 29 C.F.R. § 541.200(a)(2) (2019). Clerical roles do not qualify: the administrative employee's duties must include "the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200(a)(3).

*Identifying Primary Duties.* In the context of both exemptions, the phrase "primary duty" refers to the "principal, main, major or most important duty that the employee performs," based on the totality of the relevant circumstances. 29 C.F.R. § 541.700(a). The identification of a primary duty depends on "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* That said, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* § 541.700(b).

The DoL has identified four non-exclusive factors relevant to this determination: (1) "the relative importance of the exempt duties as compared with other types of duties"; (2) "the amount of time spent performing exempt work"; (3) "the employee's relative freedom from direct supervision"; and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* § 541.700(a); *see Domenech v. Parts Authority, Inc.*, 653 F. App'x 26, 27 (2d Cir. 2016). The DoL has also adopted "primary duty" regulations specific to

certain types of employment.  One is relevant here: the regulations defining the outside-sales exemption provide guidance on how to identify the primary duties of "[d]rivers who deliver products and also sell such products."  *See* 29 C.F.R. § 541.504(a).

While these exemptions were previously narrowly construed, that is no longer the case; courts now "have no license to give the exemption anything but a fair reading." *Vasto v. Credico (USA) LLC*, 767 F. App'x 54, 56 (2d Cir. 2019); *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) ("Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement.").  "The question of how an employee spends his or her time working is one of fact, while the question of whether those work activities exempt him or her from the FLSA is one of law."  *Flood*, 904 F.3d at 227.

   3.   Plaintiff Choi

Both Choi and the defendants move for summary judgment on Choi's overtime claims.  The defendants' motion is based on their contention that Choi was an "outside salesperson" and is therefore exempt from the overtime-wage requirements at issue. To succeed, the defendants must demonstrate that there is no genuine dispute that the exemption's two requirements are satisfied: (1) Choi's "primary duty" was making sales, and (2) he was "customarily and regularly engaged away from his

employer's place of business in performing that duty." 29
C.F.R. § 541.500(a). In conducting this analysis, courts look
not only to the wording of the exemption itself, but also to the
examples of outside salespeople that the DoL has provided at 29
C.F.R. §§ 541.504(c)(1)-(4). And some courts have looked to
certain "indicia" or "hallmarks" of sales work, including the
receipt of commissions. *See, e.g.*, *Heras v. Metropolitan
Learning Inst. Inc.*, Case No. 19-cv-2694, 2023 WL 5810784 at *9
(E.D.N.Y Aug. 18, 2023; *Martin v. Sprint United Mgmt. Co.*, 273
F. Supp. 3d 404, 439-40 (S.D.N.Y. 2017).

Choi argues that he does not qualify for the exemption
because:

> he was not paid commissions for much of his
> employment with Defendants, he spent a
> significant portion of his workday at
> Defendants' offices loading, organizing or
> unloading his vehicle or entering
> information into Defendants' computer
> systems, and he was required to regularly
> work in Defendants' offices on Saturdays to
> perform inventory and organize the
> warehouse.

Choi Letter in Opposition to Def. Mot. for Summary Judgment
("Choi Opp."), ECF 84 at 2. These arguments do not carry the
day.

Choi does not dispute that his role included "making
sales." And the undisputed facts show that to have been his
primary duty.

17

The DoL construes sales activity broadly, to include efforts in preparation for the selling effort as well as the sales pitch itself. "In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work." 29 C.F.R. § 541.500(b); [5] *see also* 29 U.S.C. § 203(k) (defining "sale" to include an "exchange," "consignment," "shipment for sale, or other disposition." And Section 541.504, which addresses salespeople who drive, states: "In determining the primary duty of drivers who sell, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including loading, driving or delivering products, shall be regarded as exempt outside sales work."

Choi testified that he was "hired as a salesperson" and originally worked the "Brooklyn route." Choi Dep. 9:25-10:2, 79:20-25. He had "seven to eight" years of sales experience when he joined the defendant companies. *Id.* at 32:7-10. In lieu of formal training with the defendants, he "went out with a former salesperson on the sales route together" for

---

[5] The same regulation continues: "Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." *Id.*

"two to three weeks" after he started. *Id.* at 31:5-11. His "job involved door-to-door work," as he visited and sold tools to the customers along his route. *Id.* at 87:3-5, 180:23-24.

Choi testified that his sales performance grew over time: after five or six months in the role, he "was at the top" of the sales group in terms of volume of goods sold. *Id.* at 137:22-138:6; 170:8-10. In his assessment, "new accounts [that he] established" had a "closer relationship with [him] than the company itself." *Id.* at 33:19-22. *See Chenensky v. N.Y. Life Ins. Co.*, 7-CV-11504, 2009 WL 4975237, at *5 (S.D.N.Y. Dec. 22, 2009) (considering, among other "hallmark activities," "whether the employee independently solicits new business").

He also spent a substantial amount of his time on the road, showing he was "customarily and regularly engaged away from his employer's place of business in performing [his sales] duty." 29 C.F.R. § 541.500(a). Choi described his work as "door-to-door visiting [of customers] and driving." *See* Choi Dep. at 86:2-3, 87:3-5. He testified that he "would mostly arrive at 8:00, and [do] the loading and unloading for about an hour or an hour and a half," and then "leave right away" for his sales route. *Id.* at 179:22-180:13. After he visited "12 to 15 [customer] locations a day," *id.* at 166:15-16, he would return to the office by 5:00 P.M. to "do loading and unloading and input information in the computer," *id.* at 182:14-22. *See* 29

19

C.F.R. § 541.500(b) (exempt sales work includes "writing sales reports, updating or revising the employee's sales or display catalogue, [and] planning itineraries").

Based on this evidence, "no reasonable juror could conclude that Plaintiff's non-sales duties accounted for more than 50% of his job duties—particularly because Plaintiff admits that they took less than half of his work time." *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *2 (S.D.N.Y. Sept. 14, 2021). And "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700.

In opposing the outside-salesman designation, Choi relies, first, on the assertion that he was not paid on commission for "much of his employment" — a reference to the second period of Choi's work for Defendants. But the Second Circuit has counseled that the outside-sales analysis should turn on the contents of the "regulation defining what it means for an employee to be 'making sales,'" *Flood*, 904 F.3d at 233, and that regulation does not require commission payments. It is true that the Supreme Court referred to the pharmaceutical employees in *Christopher* as bearing the "external indicia of salesmen," including that "they were rewarded for their efforts with incentive compensation." 567 U.S. at 166. But as the Second Circuit has noted, this was a "passing reference."

*Flood*, 904 F.3d 233; *see also Vasto v. Credico*, 767 Fed. App'x 54, 57 (2d. Cir. 2019)(plaintiffs' invocation of the "indicia of outside salespersons" referred to "what is arguably dicta in *Christopher*"). Moreover, nothing in *Christopher* (whether dicta or not) suggests that each and every indicium is a necessary condition for the exemption's application.[6]

The DoL regulations at issue are plainly focused on the nature of the work the employee does, rather than the manner of compensation. *See* 29 C.F.R. §§ 541.500, 541.504. Moreover, the regulations' single reference to commission-based compensation actually militates against a determination that such compensation is a necessary condition to the exemption's application. In Section 504's list of four examples of drivers who may qualify as exempt, the first one refers explicitly to a driver who "receives compensation commensurate with the volume of products sold." *Id.* § 541.504(c)(1). The next three examples, in contrast, make no reference to compensation at all. *See id.* This omission plainly suggests that commission compensation is not a necessary ingredient. Further, the nature

---

[6] In *Christopher*, the Court referenced five potential indicia of an outside salesman: "sales experience," sales training, "work[ing] away from the office," "minimal supervision," and "incentive compensation." *Christopher,* 567 U.S. at 165-66. The Second Circuit has counseled against over-reliance on these indicia. *Flood*, 904 F.3d at 233 n.8. Even so, of the *Christopher* indicia, all but one clearly favor categorizing Choi as an exempt outside salesperson: He was hired for his sales experience, *see* Choi Dep. 32:7-10, 92:11-20, received on-the-job sales training, *see id.* at 31:5-11, worked away from the office regularly, *see id.* at 87:3-5, 166:13-23, 180:23-24, and was relatively minimally supervised, *see id.* at 86:9-87:24, 166:9-12.

of Choi's employment maps neatly onto the characteristics listed in three of the DoL's examples. He "obtain[ed] or solicit[ed] orders for the employer's products from persons who ha[d] authority to commit the customer for purchases." 29 C.F.R.. § 541.504(c)(2); *see* Choi Dep. 33:19-22, 51:13-15, 165:10-166:12. And the record reflects that Choi both "call[ed] on new prospects" and "established customers" along his sales route to persuade them "to accept delivery of increased amounts of goods or of new products." 29 C.F.R. §§ 541.504(c)(3)-(4); *see* Choi Dep. 33:11-22, 92:11-20, 166:15-16.

Choi briefly argues that the outside salesman exemption is intended to apply to employees who "typically earn salaries well above minimum wage," and that he did not. Choi Opp. at 1-2. But, the Second Circuit has rejected the argument that "poor[] compensation" means someone is not an outside salesman. *Vasto,* 767 Fed. App'x 54, 57. "In the absence of words in the statute or regulation that require consideration of the plaintiff's level of compensation when deciding if an employee is 'making sales,' we decline to add a 'subject to compensation' exception to the 'making sales' requirement of the outside salesmen exemption under the FLSA." *Id.* Choi's argument is thus unavailing.

Choi also points to evidence of his other job responsibilities, which he characterizes as unrelated to making

sales.  These include: organizing his assigned sales truck, making deliveries, collecting payment, exchanging defective products, entering sales information into the computer system, and organizing the warehouse and taking inventory.  Pl. 56.1 ¶ B(a)(2); *see also* Choi Dep. 74:16-20 ("I'm suing because I didn't get overtime for all the loading and unloading delivery and driving the van.  That's why I filed the lawsuit.  They wouldn't pay me for that.").

The majority of these tasks are, however, actually consistent with the outside-salesperson exemption.  This includes loading and unloading: for drivers who sell, "loading [and] delivering products" are expressly identified as exempt work.  29 C.F.R. § 541.504(a).  So are "incidental deliveries and collections."  *Id.*; *see also id.* § 541.500(b) (stating that "work performed incidental to and in conjunction with the employee's own outside sales . . . shall be regarded as exempt outside sales work").

To be sure, Choi has adduced evidence that he performed tasks that are not explicitly exempted.  Each of these, however, is either clearly incidental to his sales work, or took only a very small fraction of Choi's time (or both).  For example, the defendants held monthly meetings for sales employees.  Pl. 56.1 ¶ 8.  Although the record reveals little about what transpired at those meetings, other district courts

23

have found sales meetings to be exempt activities.  *See Cangelosi*, 2015 WL 6107730, at *1 (finding "attending trade shows and meetings" to be incidental to sales); *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 99 n.20 (E.D.N.Y. 2015) ("[T]he in-office follow-up meetings conducted by some 20th edition agents could be considered in-office work 'in conjunction with the employee's own outside sales' within the meaning of 29 C.F.R. § 541.500.").  Given that these sessions are specifically identified as sales meetings, Pl. 56.1 ¶ B(b)(8), there is no logical reason to distinguish them from activities like "attending sales conferences" which are specifically exempted.  In any event, these meetings took only an hour to three-and-a-half hours a month.  *Id.*

Choi also worked some Saturdays, for roughly six hours a day (or, according to the defendants, three to four hours).  Pl. 56.1 ¶ B(a)(6); Def. 56.1 Resp. ¶ B(a)(6).  He testified that he worked on a Saturday "probably once a month, because we had to check the inventory."  Choi Dep. at 103:4-17; *see also id.* ("So they were afraid that salesmen might steal something, so they have us check the inventory.  That was about once a month or every two months.").  In addition to this "inventory check," Choi and others "had to clean the van and [see to] organization."  *Id.* 103:15-17; *see also id.* 107:12-13 ("Most of

the time when I went in [on Saturdays], it was to organize the van.").

For purposes of the defendants' motion, and drawing all inferences in Choi's favor, we count the "inventory check" that Choi testified about in the non-exempt category. Choi does not specify what the check consisted of, but the deposition transcript is fairly read to indicate that he was checking inventory separate and apart from his own sales activity. *See Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 585-86 (6th Cir. 2014) (describing inventory management for others as not incident to sales). Even so, Choi testified he spent six hours a month engaged in this activity. Adding those six hours to the eight-hour days he worked, five days a week, yields a total of 166 hours a month. On that denominator, the six hours of Saturday work constituted roughly 3.6% of his time. This is well below the 50% threshold that generally satisfies the "primary duty" test. 29 C.F.R. § 541.502.

Finally, Choi spent some amount of time exchanging defective items. Pl. 56.1 ¶ B(a)(2). The parties agree that the salespeople would do exchanges for "their" customers, *see id.*, and to the extent Choi was exchanging items that he had sold himself, that work was clearly "directly and closely related" to Choi's exempt sales work and therefore was itself exempt. 29 C.F.R. § 541.703. Indeed, as the DoL's "Making

Sales" regulation points out, the authorizing statute itself defines a "sale" to include any "exchange" or "other disposition." *Id.* § 541.501(b) (citing 29 U.S.C. § 203); *see also Chenensky*, 2009 WL 4975237, at *6 (holding that maintaining good relationships with and "presenting . . . solution[s]" to customers constituted work incidental to sales).

The undisputed record therefore indicates that Choi was an exempt outside salesman and Defendant's summary judgment motion on Choi's FLSA and NYLL overtime wage claims is granted.

    4.   Plaintiff Shin

        a.   Material disputes of fact exist regarding whether Shin qualifies as an exempt outside salesperson

Shin moved for summary judgment on all counts; the defendants did not cross-move but they oppose Shin's motion by arguing he should be treated as an exempt outside salesman. As noted above, for Shin to be treated as an exempt outside salesman, the defendants must raise triable issues of fact that: (1) his primary duty was "making sales," and (2) he was "customarily and regularly engaged away from [his] employer's place of business" in performing that duty. 29 U.S.C. § 213(a)(1). Shin effectively concedes the second prong. He testified to spending most of his day on the road when working out of New York. Shin Dep. 24:5-13, 26:21-23. And for the seven months he spent in Cleveland and seven months he spent in

Florida, he maintained a similar schedule on the road.  *Id.* at 25:25-26:2, 113:20-22, 121:22-122:5.

The first prong has two elements:  does the employee make sales and is that the employee's primary duty.  *See* 29 U.S.C. § 213(a)(1).  On this prong, Shin does not dispute that he made sales and a reasonable juror could comfortably conclude that that was Shin's primary duty.  First, as to the relative importance of his exempt and non-exempt duties, Shin's own deposition testimony indicates that his position primarily involved making sales.  Shin testified that he was hired for a sales position and remained "a salesman," even if "doing other things as well."  Shin Dep. at 11:21-24, 26:14-19.  Like Choi, he would drive a truck along an assigned route to solicit and make sales to customers.  *Id.* at 24:8-10, 26:20-27:13.  When Shin first started at the company, he covered routes for other sales representatives while they were away.  *Id.* at 29:22-30:4. His time in Cleveland is particularly indicative of a sales focus.  Shin testified that, while Cleveland had no existing customers when he arrived, he was able to establish at least fifty to seventy customers in the area.  *Id.* at 30:7-16, 115:18-21.  He also was a primary point of contact between customers and the company; for example, he would give customers his

personal number, which they would call directly. *Id.* at 28:4-16.

Shin asserts that he, like Choi, had various other job responsibilities that were unrelated to making sales, including: organizing products in the defendants' trucks, making product deliveries, and organizing the warehouse and taking inventory. *See* Pl. 56.1 ¶ B(b)(4); Pl. Mem. 10-11. Shin estimated, for example, that he spent fifty to eighty minutes every morning loading up his van prior to leaving for his sales route. Shin Dep. 24:5-22. He also testified that he would spend minutes to an hour daily logging sales after he had finished his route. *Id.* at 27:5-11. At the very least, the defendants raise triable issues of fact as to whether these activities were "incidental to and in conjunction with the employee's own outside sales or solicitations." 29 C.F.R. § 541.500(b).

Second, evidence in the record reflects that Shin spent the majority of his time visiting clients to make sales. Shin testified that he spent most of his day on the road: he would spend fifty to eighty minutes in the morning loading his van and then leave between 8:30 a.m. and 9:00 a.m.; drive his route; and then return to the office between 5:00 p.m. and 7:00

p.m. to input sales information into the office computers.  *See* Shin Dep. 24:5-22, 26:23-27:13.

Third, Shin's relative lack of supervision supports the outside sales exemption.  The defendants point, in particular, to Shin's time in Cleveland, where he successfully built up the company's customer base and sales through his efforts.  Shin testified that he gave his personal number to customers and could adjust his route based on calls from them. *Id.* at 30:13-16.  He also testified that he had authority to negotiate price with customers, provided a certain minimum was achieved.  *Id.* at 34:16-21.

In the end, the record does not clearly establish Shin's duties throughout the length of his tenure.  For example, in addition to his salesman duties, and those described below in relation to the administrative exemption, Shin also helped manage the defendants' warehouse for the last year of his employment.  Pl. 56.1 ¶ 5.  Han testified that Shin did this with Han and one other individual after Jiwoo Han left the company (which was in March 2018).  Han Dep. 36:13-23.  The record does not indicate precisely what this warehouse-management role entailed, or how long Shin spent on it.

Thus, because the defendants raise triable issues of fact regarding whether Shin falls within the outside salesman

exemption, summary judgment is denied on his overtime wage claims.

>    b.    Disputes of fact remain as to whether Shin qualifies as an exempt administrative employee

The defendants also assert that Shin was a "bona fide administrative" employee and therefore exempt from the FLSA and NYLL's overtime-pay requirement.  Administrative employees are those who are "[c]ompensated on a salary or fee basis" in accordance with certain salary requirements, and whose primary duty: (1) is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (2) includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200; *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 127 n.7 (2d Cir. 2020).  The NYLL similarly recognizes an administrative employee exemption, *see* 12 N.Y.C.R.R. § 142-2.1(c)(4)(ii), and courts typically conduct one combined analysis.  *See, e.g.*, *Timberg v. Toombs*, No. 20-CV-6060, 2022 WL 954739, at *5 (E.D.N.Y. Mar. 30, 2022) (collecting cases); *Sethi v. Narod*, 974 F. Supp. 2d 162, 184 (E.D.N.Y. 2013).[7]

---

[7] The NYLL exemption also requires that the individual "regularly and directly assist[] an employer, or an employee employed in a bona fide executive or administrative capacity (*e.g.*, employment as an administrative assistant)," or "perform[], under only general supervision, work along specialized or technical lines requiring special training, experience or

First, the parties do not dispute that Shin's compensation met the FLSA's base-salary threshold in full and the NYLL's threshold in part.  During the relevant period, FLSA's administrative exemption applied to employees who received a base salary exceeding $455 per week.  29 C.F.R. § 541.200(a).  The NYLL also has a base-salary requirement, which was as follows for New York City employers with eleven or more employees: $825.00 per week, from December 31, 2016 through December 30, 2017; $975.00 per week from December 31, 2017 through December 30, 2018; and $1,125.00 per week after December 31, 2018.  2 NY.C.R.R. 142-2.14(c)(4)(i)(1).

Han attested that Shin's salary was $560 per week from July 4, 2016 to July 10, 2016; $600 per week from July 11, 2016 to September 11, 2016; $650 per week from September 12, 2016 to November 6, 2016; November 7, 2016 to January 31, 2017, $700.00 per week; and $1,800 per week from February 1, 2017 to March 8, 2019.  Han Decl. ¶ 12.  Shin does not dispute these representations.  Thus, Shin's salary exceeded the FLSA minimum for the full period of employment and exceeded the NYLL minimum from February 1, 2017, through the end of his employment.  Because his salary does not meet the NYLL threshold from July 4, 2016 to February 1, 2017, the defendants argue instead that the

---

knowledge" — in addition to the salary minimum, office or nonmanual work, and exercise of discretion and independent judgment requirements found in FLSA. 12 N.Y.C.R.R. § 142-2.14(c)(4)(ii).

outside salesman exemption should apply to this time period for that claim.

There are, however, disputes of fact regarding whether Shin's primary duty of office or non-manual work directly related to management or general business operations of the employer or employer's customers." 29 C.F.R. § 541.200(a)(2). To satisfy the second element of the administrative exemption, an employee must "perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). "[E]mployees performing general administrative work applicable to the running of any business" may fall within the administrative exemption, while "employees directly producing the good or service that is the primary output of a business" do not. *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009).

As most relevant here, administrative operations may include "advising the management, planning," "representing the company," "promoting sales," and "business research and control." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 106 (2d Cir. 2010) (citing 29 C.F.R. § 541.205(b)). "[S]ales promotion consists of marketing activity aimed at promoting (i.e., increasing, developing, facilitating, and/or

maintaining) customer sales generally," and "an employee encouraging an increase in sales generally among all customers is an administrative employee" under FLSA.  *Id.* at 107.

The record contains evidence that, notwithstanding the parties' dispute over his formal title, Shin engaged in some sales promotion activities — and not simply sales — during his employment.  The defendants point, in particular, to his work outside New York.  Shin was sent to Cleveland for seven months, where he developed a new market from scratch, identified potential customers, and established the company brand.  Shin Dep. 30:7-16, 115:18-21.  After creating a viable sales territory there, he identified and trained a salesman to take on a sales role in that territory.  *Id.* at 84:11-13.  He also went to Orlando for seven months, where he was tasked with helping a struggling regional manager, "mak[ing] a sales territory" and expanding the customer base.  *Id.* at 114:20-115:21.  Additionally, Shin traveled to Columbus, Ohio to conduct market research, *see id.* at 92:18-19, and went to Las Vegas at least once a year to attend a trade show, where he met wholesalers and performed market research into the products sold by potential competitors, *see id.* at 93:24-95:5.

Disputes of fact also exist as to the third element of the exemption: whether Shin's primary duty included "the exercise of discretion or independent judgment on matters of

significance." 29 C.F.R. § 541.200(a)(3). Exercising discretion and independent judgment "involv[es] the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). Responsibilities like "clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work" do not count. *Id.* § 541.202(e). "Matters of significance," in turn, "refers to the level of importance or consequence of the work performed." *Id.* § 541.202. The defendants proffer evidence that Shin's work required him to exercise discretion and independent judgment— again, especially during his time outside of New York. As discussed above, he established a new market for the company in Cleveland, which efforts included identifying and training a new salesman for that area, and worked to expand the customer base in Orlando. Shin Dep. 83:6-84:13. While Plaintiffs assert that Han "made [the] decisions about expanding the [Cleveland and Orlando] territory[ies] and hiring new salespeople there," they concede that Chin went to "set up new sales territories" in those cities. *See* Pl. Mem. 5. Han also attested that Shin supervised and trained various other employees, including salesman in Florida, Georgia, and New York. *See* Han Decl. ¶ 16. These responsibilities at least raise

34

triable issues of fact as to whether Shin exercised discretion and independent judgment.

In sum, disputes of material fact remain regarding whether Shin is exempt as an individual employed in an administrative capacity, apart from or in addition to the applicability of the outside salesman exemption. Summary judgment as to Shin's overtime wages claim is therefore denied.

> c. Material disputes of fact exist regarding Shin's working hours

Genuine disputes of facts also exist regarding Shin's hours during his time spent working in New York. On the one hand, Shin testified that he generally reported to work at 7:40 a.m., but many times came in before then. Shin Dep. 18:19-19:14, 59:4-18. On weekdays, an early return to the office from his sales route was 5:00 p.m., but he often did not return until 6:00 p.m. or 7:00 p.m., and sometimes as late as 10:00 p.m., depending on how far he had to travel. *Id.* at 26:20-27:13, 49:20-50:3. Shin further testified that the defendants held monthly meetings on Friday evenings for sales employees, which would start at 7:30 p.m. or 8:00 p.m. and end around 10:00 p.m. or 11:00 p.m. *Id.* at 52:23-53:22. He also often had to work Saturdays and Sundays, including doing inventory once or twice a month, which "usually [took] six to seven hours." *Id.* at 74:13-75.

In rebuttal, the defendants offer evidence regarding the salespeople's typical workdays, early morning hours, and the frequency and duration of weekend work: namely, that salespeople arrived in the morning around 8:00 a.m. and returned in the afternoon between 3:00 p.m. and 5:30 p.m. *See* Han Decl. ¶ 4, 23; Jiwoo Han Decl. ¶ 5. Han also placed the frequency and time of weekend work as occurring only "once every three or six months" and lasting three to four hours each time. *See* Han Dep. 104:21-22; Han Decl. ¶ 25.

The defendants do not, however, dispute Shin's assertions of hours worked during his seven months in Ohio and seven months in Florida. At his deposition, Shin testified that he worked three days in Pittsburgh and two days in Cleveland each week, and sometimes on Saturday. *See* Shin Dep. 83:8-11. On days that he went to Pittsburgh, he would leave at 5:00 a.m. and finish work at 8:00 p.m. or 9:00 p.m. *Id.* at 83:11-15. According to Shin, he maintained this schedule for the "whole six months." *Id.* at 83:16-19. Similarly, Shin testified that, while working in Florida, he worked from 8:00 a.m. until 6:00 p.m. or 7:00 p.m. every day, and worked on Saturdays three times a month. *Id.* At 121:24-122:20. The defendants point to no evidence to rebut these assertions. *See* Def. 56.1 Response 16–17.

36

Notwithstanding the undisputed evidence indicating that Shin worked more than forty hours at least during some weeks, summary judgment is nevertheless denied because the defendants raise triable issues of fact regarding whether he falls within the outside salesman or administrative exemption (or a combined exemption).

5.  Plaintiff Kim

Jeannie Kim testified, and Han did not meaningfully contest, that she worked more than forty hours during at least some weeks.  Kim stated that she started work at 9:00 a.m. and "usually" stopped around 8:00 p.m., for 11 hours a day.  *See* Kim Dep. 10:21-11:12.  Defendant Han, in turn, testified that Kim "[s]ometimes left at 6:00, sometimes at 7:00, sometimes at 8:00."  Han Dep. 17:10-16; *see* Han Decl. ¶ 34.  The parties dispute whether Kim took a lunch break.  *Compare* Kim Dep. 30:8-19, *with* Han Decl. ¶ 45.  Even assuming she did take a full lunch break each day, however, her post-6:00 p.m. work would have put her over the forty-hour limit and would require overtime compensation.  Indeed, the defendants only "[d]ispute . . . how often she worked past 6:00" — not that she ever did so.  Def. 56.1 Response 16.

As with Shin, however, Kim is not entitled to summary judgment on her overtime wage claims: Even if she worked more than forty hours a week, the defendants raise triable issues of

37

fact regarding how often she did so and whether she is an exempt administrative employee.

There is no dispute that Kim's compensation exceeded both FLSA's and NYLL's base salary thresholds, satisfying the first requirement of the exemption.  In her responses to the defendants' interrogatories, Kim stated that she was paid $800.00 per week from the beginning of her employment on January 15, 2016 until September 18, 2016, and then paid $925.00 from September 19, 2016 until the end of her employment on December 15, 2017.  See Pl. Inter. Responses 3, ECF No. 70-17.  Thus, Kim's salary exceeded the both the FLSA and NYLL minimum salary thresholds throughout the relevant period.  *See* 29 C.F.R. § 541.200(a); 2 NY.C.R.R. 142-2.14(c)(4)(i)(1).

Nor does Kim meaningfully dispute that her "primary duty of office or non-manual work directly related to management or general business operations of the employer or employer's customers."  29 C.F.R. § 541.200(a)(2). *See* Pl. Memo at 11 (focusing only on whether defendants can show Kim exercised discretion and independent judgment in performing her duties).  She therefore satisfies the second requirement of the administrative exception.

The parties sharply dispute, however, the third part of the administrative exemption:  whether Kim's primary duties included "the exercise of discretion or independent judgment on

38

matters of significance." 29 C.F.R. § 541.200(a)(3). Han testified that Kim acted as the "office manager" and had the authority to hire, fire, and train employees, which she exercised on at least one occasion by recruiting and hiring a new employee who later became her executive assistant. *See* Han Dep. 33:18-35:6; Han Decl. ¶¶ 30, 35. He also attested that she "took care of the office and managed the office employees," including by monitoring their punctuality. *Id.* at ¶¶ 30, 32. The defendants argue this required discretion as she dealt with personnel and showed Kim's implementation of a significant company policy. *See* Def. Opp. 19. According to the defendants, Kim also "trained employees in managing account receivable and payable software, data entry and management, customer relations, financial record organizing, bookkeeping and other administrative tasks." *Id.* ¶ 31.

Kim tells a different story, asserting that she sought direction from Han in deciding how to do her work and did not supervise any other employees. *See* Pl. 56.1 ¶ B(c)(19)—(21); Kim Dep. 15:15-22. For example, Kim disputed that she worked as an office manager or supervised anyone in that role, and she denied hiring or firing anyone during her employment. *See* Kim Dep. 15:11-22, 19:13-23. She also testified that all personnel paperwork was handled by Han or a CPA, and she was not involved in personnel issues. *See id.* at 96:11-97:16, 84:25-85:10.

Ultimately, these factual questions regarding the scope and responsibilities of Kim's position are best left for a jury to resolve. Because the defendants raise triable issues of fact regarding whether Kim falls within the administrative exemption, summary judgment is denied on her overtime wage claims.

6.    Plaintiff Son

Finally, material disputes of fact exist regarding Rachel Son's weekly hours. On the one hand, Son testified that she could never leave before 6:00 p.m., because she had to wait for salespeople to return to the office, input their invoices, and collect their checks for depositing. Son Dep. 18:2-14, 60:20-63:8. She "mostly picked up [her] kid" from childcare at 7:00 p.m. because she left work late. *Id.* at 52:7-14. She also deposited the checks collected from the salespeople each day after leaving the office, which took between five and fifteen minutes. *Id.* at 52:15-54:21. On several occasions, she made these deposits after picking up her child from daycare. *Id.* at 75: 21-25. Son also testified that she only took fifteen to twenty minutes for lunch and did not receive a break. *Id.* at 30:19-31:25. Plaintiffs point to ATM deposit receipts as late as 9:00 p.m. as indicative of her long working hours.

On the other hand, Han states that Son was given a one hour lunch break and left early before 6:00 p.m. every day to

pick up her child.  Han Decl. ¶¶ 38, 45.  As the defendants
point out, Han worked in the same office as Son and therefore
had personal knowledge of her work hours and lunch break.  Def.
Opp 21; *see* Pl. 56.1 ¶ A(7).  Son herself acknowledged that when
Han was in the office (in other words, not out of town or on a
business trip), "there was [n]ever a day when he left before
[she] did."  Son Dep. 83:10-18.  The defendants also produced an
affidavit from Hannah Ko, the principal of Son's child's daycare
center for the relevant time period.  *See* Aff. of Hannah Ko ("Ko
Aff."), ECF No. 70-16.  Ko stated that "Son generally dropped-
off her child between 8:30 am and 8:40 am" and "usually picked
up her child by 5:30 p.m."  *Id.* ¶¶ 3, 5.  "[A]pproximately 5 to 6
days per month, she picked up her child between 6:00 p.m. and
6:10 p.m.."  *Id.* ¶ 5.

Because there are factual disputes regarding Son's
weekly hours, summary judgment on her overtime claims is denied.

## C.    **Plaintiffs' NYLL Wage Notice and Statement Claims**

Plaintiffs also move for summary judgment on their
NYLL claims that the defendants failed to provide proper wage
notice and statements.  Summary judgment is denied because the
defendants raise affirmative defenses that turn on Plaintiffs'
hours worked and applicable exemptions, which are disputed for
the reasons set forth above.  Moreover, Plaintiffs will be

directed to show cause why these claims should not be dismissed for lack of standing.

    1.  <u>Summary Judgment</u>

        Section 195(1) of the NYLL obligates an employer to give a wage notice to an employee at the time of hiring. *See* N.Y. Lab. L. § 195(1). That notice must include, among other things, "the rate or rates of pay and basis thereof," information as to whether pay will be "by the hour, shift, day, week, salary, piece, commission, or other," "allowances," "wage supplements," "the name of the employer," and "the telephone number of the employer." *Id.* The notice must also "state the regular hourly rate and overtime rate of pay" for "employees who are not exempt from overtime compensation." *Id.*

        Section 195(3) of the NYLL further requires employers to "furnish each employee with a statement with every payment of wages" that lists information such as "the dates of work covered by that payment of wages"; the "name of [the] employee"; the "name of [the] employer"; the "rate or rates of pay and basis thereof"; whether pay was "by the hour, shift, day, week, salary piece, commission, or other"; "gross wages"; "deductions"; and "allowances." N.Y. Lab. L. § 195(3). That statement must also "include the overtime rate or rates of pay" for "employees who are not exempt from overtime compensation," among other information. *Id.*

Importantly, however, an employer's "'complete and timely payment of all wages . . . to the employee who was not provided notice' or 'who was not provided statements' serves as an affirmative defense to a wage notice or wage statement claim." *See Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 219 (E.D.N.Y. 2021) (quoting N.Y. Lab. L. §§ 198(1-b); 198(1-d)).

Here, there is no dispute that the defendants failed to provide time-of-hire notice or pay stubs to any of the Plaintiffs. *See* Pl. 56.1 ¶¶ B(a)(13), B(b)(17), B(c)(28), B(d)(36); *see* Def. 56.1 Response 8, 13, 17, 20. The defendants, however, assert that each plaintiff received "complete and timely payment of all wages due," invoking the affirmative defense to those Section 195 claims pursuant to N.Y. Lab. L. §§ 198(1-b), 198(1-d). Def. Opp. 22–23; *see* Han Decl. ¶¶ 9, 17, 29, 36; Exs. B–E (Defendants' pay records for Choi, Shin, Kim, and Son).

Because there are genuine disputes regarding both whether Son worked more than forty hours in a week, and whether Shin and Kim are exempt employees, the merits of this defense cannot be resolved at this time. In other words, if these plaintiffs worked less than forty hours a week or fell within an exemption such that they were not entitled to overtime pay, then they would have been paid all wages due, which Han attested were

timely made.  *See Guohua Liu v. Elegance Rest. Furniture Corp.*, No. 15-CV-5787, 2017 WL 4339476, at *6 (E.D.N.Y. Sept. 25, 2017); *Dudley v. Hanzon Homecare Servs., Inc.*, No. 15-CV-8821, 2018 WL 481884, at *4 (S.D.N.Y. Jan. 17, 2018).  Summary judgment on these claims is therefore denied with respect to Shin, Kim, and Son.

The Court likewise denies summary judgment on Choi's claims.[8]  Even though the Court concluded above that Choi is an exempt outside salesman, there is a material dispute of fact regarding whether he received complete and timely payment of all wages due: as noted above, Choi testified that he did not received commissions to which he was entitled.  Choi Dep. at 88:14-22; 137:10-138:12; *cf. Rakeman v. MLD Mortg. Inc.*, No. 16-CV-453, 2020 WL 13566471, at *13 (E.D.N.Y. Dec. 18, 2020) (observing, on claim for unpaid commissions, that "NYLL entitles a successful plaintiff to recover the full amount of wages owed[.]").

---

[8]  The court also finds it appropriate to retain supplemental jurisdiction over Choi's NYLL claims.  *See* 28 U.S.C. § 1367.  For a claim to fall within the scope of a court's supplemental jurisdiction, it must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  And claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 157 (1997).  Choi's claims relate to the same common nucleus of operative fact as the other Plaintiff's FLSA claims.  *See Fallon v. 18 Greenwich Ave., LLC*, No. 19 Civ. 9579, 2021 WL 1105066, at *8 (S.D.N.Y. Mar. 23, 2021) ("Courts commonly find the common nucleus test satisfied where . . . a non-FLSA plaintiff's NYLL claims involve the same issues of hours and payments for plaintiffs who were employed in the same jobs, doing the same work, during periods that overlap with many of the FLSA plaintiffs.").

2.  Standing

Plaintiffs have not established that they have standing to maintain their wage notice and statement claims. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that a plaintiff must demonstrate standing for each claim she seeks to press."). Because the issue of standing implicates the subject-matter jurisdiction of a federal court, the Court has an affirmative obligation to evaluate (and re-evaluate) whether standing exists as to each of Plaintiffs' claims. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006).

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Thus, evidence that a defendant violated a statute, even when the legislature has created a statutory cause of action, is insufficient to confer standing because "an injury in law is not an injury in fact." *Id.* Instead, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue . . . over that violation in federal court." *Id.* As a result, "[t]echnical statutory violations that do not lead to either a tangible injury or something akin to a traditional cause of action cannot sustain Article III standing in federal court."

*Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

For this reason, numerous courts in the Second Circuit have concluded that employees lacked standing when they failed to establish any concrete injury traceable to the violation of the NYLL's wage notice and statement requirements. *See, e.g.*, *Ramirez v. Urion Constr. LLC*, 674 F.Supp. 3d 42, 55 (S.D.N.Y. May 19, 2023) (collecting cases); *Sanchez v. Trescly*, No. 19-CV-4524, 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023); *Sevilla*, 2022 WL 954740, at *7. The statutory violation is not enough, as an employee must show that they suffered "a tangible injury" or that the statutory violation would give rise to "something akin to a traditional cause of action." *Ramirez,* 674 F.Supp at 55. Such is the case here: Plaintiffs do not allege, let alone proffer any evidence, "link[ing] any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL." *See Wang v. XBB, Inc.*, No. 18-CV-7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) (denying, after bench trial, any recovery on NYLL statutory notice violations).

Accordingly, Plaintiffs are ordered to show cause, by January 6, 2025, why the Court should not dismiss these claims for lack of subject-matter jurisdiction.

**D.   Plaintiffs' Spread-of-Hours Claims**

Summary judgment on Plaintiffs' spread-of-hours claims must be denied for the same reasons as the wage notice and statement claims: there are factual disputes as to how many hours Plaintiffs worked each day, and whether they fall within any applicable exemptions.

Under the NYLL, an employee is entitled to an additional hour of pay at the "basic minimum hourly rate" for each day on which that employee works more than ten hours. 12 N.Y.C.R.R. § 142-2.4.  "Spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday," which "includes working time plus time off for meals plus intervals off duty."  *Id.* § 142-2.18.  As with the NYLL's overtime wage provisions, the term "employee" excludes workers who fall within the outside salesman or administrative exemptions.  12 N.Y.C.R.R. § 142-2.14(c)(4)-(5); *see Jeong Woo Kim v. 511 E. 5TH St., LLC*, 133 F. Supp. 3d 654, 664 (S.D.N.Y. 2015).

As noted above, there are factual disputes regarding whether Son worked more than ten hours on any given day, and whether Shin, and Kim are exempt employees — either of which could preclude the defendants from the obligation to pay spread-of-hours wages.  Thus, Son, Shin, and Kim are not entitled to summary judgment on these claims.  *Kim*, 133 F. Supp. 3d at 664;

*Perez v. G & P Auto Wash Inc.*, 930 F. Supp. 2d 423, 436 (E.D.N.Y. 2013) (denying summary judgment where factual dispute over whether "off-the-clock work" should be counted for spread-of-hours purposes).  However, because Choi is an exempt outside salesman, the Court also grants summary judgment to the defendants on his spread-of-hours claim.  *See* 12 N.Y.C.R.R. § 142-2.14(c)(5).

**E.  Joint and Several Liability for All Defendants**

Finally, Plaintiffs move for summary judgment on the issue of whether SD Tools, Zered, and Han are all "employers" under the FLSA and the NYLL and therefore can be held jointly and severally liable for any damages.  Because Plaintiffs' are not entitled to summary judgment on any of their substantive claims, the Court concludes that this issue is best left for determination at trial.

### IV.  Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied.  The defendants' motion for summary judgment is granted.

SO ORDERED.


____/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge



Dated:      December 4, 2024
            Brooklyn, New York